[S. F. No. 6798. In Bank.—February 16, 1915.]

JOSEPH FEARON, Respondent, v. ANTONIO FODERA et al., Defendants and Respondents; T. C. TOGNAZZINI and SWISS AMERICAN BANK (a Corporation), Appellants.

SLANDER OF TITLE TO LAND—QUIETING TITLE—APPEAL BY ONE DEFENDANT FROM JUDGMENT—SERVICE OF NOTICE OF APPEAL ON OTHER DEFENDANTS.—In an action to quiet title to land and for damages for slander of title, in which judgment is rendered in favor of the plaintiff quieting his title and awarding him damages against several of the defendants, it is not necessary, on an appeal from the judgment taken by one of such defendants under the old method of appeal, to serve the notice of appeal on a nonappealing defendant against whom judgment was rendered by default, nor on parties joined as defendants against whom no judgment was rendered and who filed disclaimers in the action.

ID.—NEW TRIAL—NOTICE OF INTENTION—SERVICE OF NOTICE BY DISCLAIMING DEFENDANT—NOTICE OF APPEAL.—A defendant in such action, who had unequivocally disclaimed any interest in the land in controversy, but against whom the plaintiff had recovered judgment quieting his title and also an award for money damages on the

theory that he was a joint tort-feasor, was not required to serve his notice of intention to move for a new trial, nor his notice of appeal from the order denying him a new trial upon any of his codefendants against whom judgment was entered.

ID.—JUDGMENT AGAINST JOINT TORT-FEASORS—APPEAL—REVERSAL OF JUDGMENT AS TO ONE DEFENDANT.—It is the statutory rule in this state that if a judgment be given against several defendants who have been sued as joint tort-feasors, the judgment, if found to be erroneous as to any one of the defendants, may be vacated as to that one only, and be continued in full force and effect as to the remaining defendants who have not appealed.

ID.—NOTICE OF INTENTION TO MOVE FOR NEW TRIAL—SUFFICIENCY OF FORM.—A notice of intention to move for a new trial is not rendered ineffectual because the intention as stated was "to move the above entitled court to vacate the *judgment* entered in the above entitled matter and to grant a new trial in said cause."

ID.—SLANDER OF TITLE DEFINED.—Slander of title is the defamation of title to property, real or personal, by one who falsely and maliciously disparages the title thereto, and thereby causes the owner thereof some special pecuniary loss or damage.

ID.—SLANDER OF TITLE CONTAINED IN EXECUTED DEED—MALICE A NECESSARY INGREDIENT.—While an action for slander of title may be based upon defamatory words contained and published in an executed deed, still it is essential to the maintenance of such an action that the party claiming to be aggrieved by an alleged slanderous disparagement of his title should show, among other things, not only that the statements complained of were false, but that they were maliciously made with the intent to defame, and thereby disparage the title involved. In other words, malice, express or implied, in the making of slanderous statements is an essential ingredient of a cause of action for damages for slander of title, without proof of which such action must fail. The burden of proving such malice rests upon the plaintiff.

ID.—BANK ACCEPTING DEED AS SECURITY—OMISSION TO EXAMINE TITLE. The fact that a bank, without making any examination of the title, accepts from its creditor as security for the indebtedness due by him a deed to land in which the creditor has no interest, upon the creditor's assurance that he is the beneficial owner of the property purporting to be conveyed, is not sufficient of itself to render the bank liable in an action for slander of the title of the owner of the land, in the absence of evidence showing either expressly or by fair inference that the acceptance of the deed was prompted by malice.

APPEAL from a judgment of the Superior Court of Fresno County and from an order refusing a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

J. J. Mazza, and Lilienthal, McKinstry & Raymond, for Appellants.

Wm. H. H. Hart, for Plaintiff and Respondent.

THE COURT.—A hearing of the above-entitled cause was ordered before this court. After due consideration, we are satisfied with the opinion and decision of the court of appeal for the first district, by Presiding Justice Lennon, which is hereby adopted and made the decision of this court. It is as follows:

"In this action the plaintiff sought and recovered a judgment quieting his title to certain lands in the county of Fresno, and awarding him damages as well against certain of the defendants for what in law is known as 'slander of title.' The complaint in effect charged that the defendants Antonio Fodera, Rose Fodera, J. J. Rauer, T. C. Tognazzini, and W. D. Shawhan had conspired to unlawfuly encumber and cloud the plaintiff's title to the lands in question. In this behalf the complaint alleged substantially that the defendants Antonio Fodera and Rose Fodera, with the knowledge and connivance of all of the defendants mentioned, falsely represented that they had some claim upon the lands of plaintiff; that thereupon the defendants Antonio Fodera, Rose Fodera, and J. J. Rauer prepared what purported to be a deed, signed by the Fodera defendants as grantors, describing and conveying to the defendants Tognazzini and Shawhan the lands of the plaintiff; that the defendant Rauer thereupon signed and acknowledged the deed mentioned as a witness to the execution thereof; that thereafter the Fodera defendants caused said deed to be recorded in the county of Fresno, and that the same has ever since constituted a cloud upon plaintiff's title to the land described therein. In substance and effect the complaint further alleged that the purpose of the Fodera defendants in making said deed was to create a lien upon the common interests which the defendants De Long and the M. K. & T. Oil Company might have had in the lands described in the deed, when in truth and in fact the Fodera defendants well knew and had notice that the lands described in the deed were the property of the plaintiff

and not of the defendants De Long and the M. K. & T. Oil
Company; that by reason of said conspiracy the plaintiff was
embarrassed in the free use and disposition of his lands and
had been damaged thereby in the sum of one thousand dol-
lars. The complaint also alleged that the defendant, Swiss
American Bank, by reason of the deed referred to, claimed
some interest in the plaintiff's lands, but that said claim was
without any right whatever.

"The defendant Rauer defaulted. The remaining defend-
ants, save and except De Long and the M. K. & T. Oil Com-
pany, joined issue upon the allegations of the complaint. In
addition to denying all of the allegations of the complaint the
defendants Tognazzini and the Swiss American Bank eventu-
ally disclaimed any interest in the plaintiff's lands. The an-
swer of these defendants further averred that at the time of
the execution of the deed in question the Fodera defendants
were indebted to the bank in the sum of $12,946; that the
Fodera defendants represented to Tognazzini, who was at that
time the vice-president of the bank, that he, Fodera, was the
owner of the real property described in the plaintiff's com-
plaint, and that the defendants De Long and the M. K. & T.
Oil Company merely held said property in trust; that the
Fodera defendants transferred and conveyed said property
to the defendants Tognazzini and W. D. Shawhan as addi-
tional security for the payment of the Fodera indebtedness
to the bank; that Tognazzini, Shawhan, or the bank did not
make any search of the records of Fresno County to ascertain
the true *status* of the title to the property in question, but
relied solely upon the representations made to them by the
defendant Antonio Fodera. The answer of the defendants
Tognazzini and the bank concluded with the prayer that if it
was found that the Fodera defendants had any interest in
the property in question, it be decreed that such interest was
subject to a lien by way of first mortgage to the bank.

"After the trial commenced the defendants Tognazzini and
Swiss American Bank filed a supplemental answer, unequivo-
cally disclaiming any interest in the plaintiff's lands, and al-
leging that subsequent to the institution of the action the
defendant Tognazzini had executed a quitclaim deed to the
Fodera defendants because they had paid their indebtedness
to the bank. The defendants M. K. & T. Company and De

Long by their answer also absolutely and unequivocally disclaimed any interest in the plaintiff's lands.

"Upon a trial of the issues thus framed, the lower court made its findings of fact in favor of the plaintiff, and among other things found that the Fodera defendants, Rauer, Tognazzini, Shawhan, and the Swiss American Bank never had any reason or right to claim that the Fodera defendants, De Long, or the M. K. & T. Oil Company had or ever had any right, title, or claim in or to any part of the lands described in the plaintiff's complaint. It was further found that the defendants De Long and M. K. & T. Oil Company never had or claimed any interest in such lands. Thereupon judgment was rendered and entered against the defendants Fodera, Rauer, Shawhan, Tognazzini, and the Swiss American Bank, wherein it was decreed that the plaintiff have and recover from each of the defendants named the sum of $435, as damages for the alleged slander of plaintiff's title. The judgment declared further that the deed from the defendants Fodera to the defendants Tognazzini and Shawhan was null and void, and that each of the several defendants above named be perpetually enjoined from asserting any claim to the land in controversy adversely to the plaintiff.

"The defendants Tognazzini and Swiss American Bank took an appeal from the judgment and from an order denying them a new trial. Notice of appeal from the judgment was served upon all of the defendants in the action save and except De Long and the M. K. & T. Oil Company. Notice of intention to move for a new trial and notice of appeal from the order denying a new trial were served upon the plaintiff but not upon any of the codefendants. The plaintiff now moves that the appeal from the judgment and from the order denying a new trial be dismissed.

"The motion to dismiss the appeal from the judgment is grounded primarily upon the contention that the defaulting defendant Rauer and the disclaiming defendants De Long and M. K. & T. Oil Company were adverse parties, whose interests would necessarily be injuriously affected by a reversal or modification of the judgment rendered and entered against the remaining defendants, and that therefore notice of appeal should have been served upon them in order to confer upon this court jurisdiction of the subject-matter of the action.

"This contention cannot be sustained. Conceding, as counsel for the plaintiff contends, that before this court can take cognizance of an appeal prosecuted and perfected under the old method of appeal notice thereof must be given to all parties to the action, including the nonappealing defendants whose interest in the subject-matter of the appeal may be injuriously affected by a reversal or modification of the judgment or order appealed from—this rule cannot be successfully invoked in aid of the motion to dismiss in the present case. It is apparent from the record before us that the interests of the particular defendants who were not served with the notice of appeal cannot in any wise be affected by a reversal or modification of the judgment rendered against the appealing defendants. The defendant Rauer has not appealed from the judgment taken and rendered against him by default; and a reversal or modification of the judgment as against the appealing defendants cannot adversely affect the existing rights or interests of Rauer, because in any event the judgment against him will stand as originally entered. In short, a reversal of the judgment appealed from would not nullify the default of the defendant Rauer nor dissolve the judgment rendered against him. Therefore with respect to the defendant Rauer it is manifest that he is not an adverse party on whom service of the notice of appeal was required to be given. (*Randall* v. *Hunter*, 69 Cal. 80, [10 Pac. 130]; *McKeany* v. *Black* (Cal.), 46 Pac. 381; *Kenney* v. *Parks*, 120 Cal. 22, [52 Pac. 40].)

"We are unable to perceive how a reversal or modification of the judgment rendered and entered against the appealing defendants can possibly affect the interests or alter the situation of the disclaiming defendants De Long and M. K. & T. Oil Company. The judgment appealed from is absolutely silent as to these disclaiming defendants, and therefore in so far as they are concerned cannot be considered a judgment at all. (*Fowden* v. *Pacific Coast S. S. Co.*, 149 Cal. 151, [86 Pac. 178].)

"In brief, it does not appear from the record before us that there has been any determination of the plaintiff's claim against the defendants De Long and M. K. & T. Oil Company, and consequently a reversal or modification of the judgment appealed from would not materially alter the situation in

which they were left at the conclusion of the trial of the case. (*French* v. *McCarthy,* 110 Cal. 12, [42 Pac. 302].)

"We do not see that the result would be different even if it be conceded, as counsel for the plaintiff contends, that a reversal of the judgment appealed from would leave the defendants De Long and M. K. & T. Oil Company liable to a future judgment which might be rendered in the case in the event of a new trial being granted. By their answers the defendants last referred to disclaimed unequivocally any interest in the land in controversy; and consequently as against them any future judgment which might be rendered in the action could give to the plaintiff only that which in effect already had been granted by disclaimer. (*Bulwer Con. Mining Co.* v. *Standard Mining Co.,* 83 Cal. 613, [23 Pac. 1109].)

"This being so it seems clear, to us that in any event the defendants De Long and M. K. & T. Oil Company have no interest in the subject-matter of the action or the judgment appealed from which could possibly be affected, adversely or otherwise, by the result of this appeal; and therefore it was not essential that notice of appeal should have been served upon them. (*Deiter* v. *Kiser,* 162 Cal. 315, [122 Pac. 469].)

It is the contention of the plaintiff that the appeal from the order denying a new trial should be dismissed, because neither the notice of intention to move for a new trial nor the notice of appeal from the order denying a new trial was served upon any of the codefendants in the action against whom judgment was entered.

"This contention cannot be sustained. It is based upon the erroneous assumption that a new trial must be granted to all of the defendants against whom judgment was entered if it should be found that the appealing defendants are entitled to a new trial. It will be remembered that the appealing defendants ultimately unequivocally disclaimed any interest in the lands in controversy. Consequently they are interested in and complain solely of that phase of the judgment which calls for money damages against them as joint tort-feasors. It was the common law rule that the reversal of a judgment against several joint tort-feasors, and the granting of a new trial for error committed to the prejudice of one defendant, necessitated a reversal of the judgment and the granting of a new trial as to all of the defendants. This rule, however, has been materially modified if not entirely superseded by

the statutory rule in force in this jurisdiction. It is now the statutory rule in this state that if a judgment be given against several defendants who have been sued as joint tort-feasors, the judgment, if found to be erroneous as to any one of the defendants, may be vacated as to that one only, and be continued in full force and effect as to the remaining defendants who have not appealed. (Code Civ. Proc., secs. 578 and 579; *Nichols* v. *Dunphy,* 58 Cal. 605; *Cole* v. *Roebling Construction Co.,* 156 Cal. 443, [105 Pac. 255]; *Fowden* v. *Pacific Coast S. S. Co.,* 149 Cal. 151, [86 Pac. 178]; *Zibbel* v. *Southern Pac. Co.,* 160 Cal. 237, [116 Pac. 513].)

"Incidentally the point is made upon the motion to dismiss that the notice of intention to move for a new trial was ineffectual because the intention as stated was 'to move the above entitled court to vacate the *judgment* entered in the above entitled matter and to grant a new trial in said cause.' It is the plaintiff's contention that inasmuch as the proceedings leading up to a new trial are initiated only by a motion to set aside the *decision* (Code Civ. Proc., sec. 657), the notice of intention should have been 'to vacate and set aside the decision.'

"This point is without merit. The language of the notice of intention in the present case is identical with the language employed in the notice of intention given in the case of *Locke* v. *Moulton,* 96 Cal. 21, [30 Pac. 957]. There the court in effect held that although the notice of intention did not in terms refer to the decision sought to be vacated, nevertheless the language employed effectively notified the prevailing party of the intention to move for a new trial which, if granted, necessarily would vacate the decision. This was held to be sufficient; and upon the authority of the case cited it must be held that the notice of intention in the present case was in all respects legally sufficient. (See, also, *Hoover* v. *Wolfe,* 167 Cal. 337, [139 Pac. 794].)

"It follows from what has been said that the motion to dismiss must be denied.

"The judgment appealed from is assailed upon the ground that the evidence does not support some of the findings of fact made by the trial court, and also upon the ground that, in so far as the remaining findings are supported by evidence, such findings do not in turn support and warrant the

judgment rendered and entered against the defendants Tognazzini and Swiss American Bank.

"We are satisfied that this contention must be sustained. The gist of plaintiff's cause of action in so far as it controls the judgment for damages was in effect that the defendants Antonio and Rose Fodera, Rauer, Tognazzini, and Shawhan had unlawfully and wrongfully conspired to slander plaintiff's title to the property described in the complaint; and that in pursuance of such conspiracy each of said defendants, with the knowledge and consent of one another, falsely represented and pretended, by the means and methods hereinbefore narrated, that they had some claim upon the plaintiff's lands. It will be noted in passing that plaintiff's complaint did not expressly charge the defendant Swiss American Bank with knowledge of or participation in the conspiracy complained of. The defendants Tognazzini and the bank having disclaimed any right, title or interest in the lands in controversy, the only issue as against them remaining to be determined was that of the alleged slander of plaintiff's title. (*Walden* v. *Peters,* 2 Rob. (La.) 331, [38 Am. Dec. 213]; *Hewitt* v. *Seaton,* 14 La. 159.)

"Upon the issue of slander of title there was offered in evidence upon behalf of the plaintiff the deposition of the defendant Tognazzini which in effect was as follows: At the time the deed in controversy was executed the defendant Antonio Fodera was indebted to the Swiss American Bank, of which institution the defendant Tognazzini was manager, in the sum of approximately fourteen thousand dollars. This indebtedness was variously but insufficiently secured. Prior to the execution of the deed Fodera had been pressed for payment and threatened with foreclosure proceedings by the bank. Fodera was unable to meet the demand of the bank, and thereupon, in consideration of the making of the deed in controversy an extension of time was granted him in which to pay his indebtedness. Tognazzini, upon behalf of and as trustee for the bank, accepted the deed as additional security solely upon the representation of Fodera that he had an interest in the property conveyed. Subsequent to the institution of this action Fodera paid his indebtedness to the defendant bank, whereupon Tognazzini executed to Fodera a quitclaim deed to the land in question, and thereupon filed in the

action an absolute and unequivocal disclaimer of any right,
title or interest in the lands of plaintiff.

"Aside from the mere fact of the execution and accept-
ance of the deed referred to the plaintiff apparently relied
on the testimony of Tognazzini to support the claim that the
bank and Tognazzini had conspired with the remaining de-
fendants to slander plaintiff's title. At any rate the record
before us is barren of any other evidence which tends even
remotely to connect Tognazzini and the bank with the con-
ception and consummation of the conspiracy alleged and es-
tablished against the other defendants. The testimony of
Tognazzini as detailed in his deposition was not disputed,
and in keeping therewith the trial court found 'That the de-
fendant Antonio Fodera . . . represented to said defendants
W. D. Shawhan and T. C. Tognazzini that he, said Fodera,
was interested in the property . . . and that the same was
held in trust by the said M. K. & T. Oil Co. and D. M. De
Long for him, the said Antonio Fodera; that thereupon said
Antonio Fodera and wife . . . executed the deed as addi-
tional security for the payment of the indebtedness then due
and owing from said Antonio Fodera and Rose Fodera, his
wife, to said Swiss American Bank . . . ; that said T. C.
Tognazzini . . . relied solely on the uncertain and vague rep-
resentations of Antonio Fodera without making any investiga-
tion as to the truth of the statements of said Antonio Fodera;
that at the time of taking said deed said T. C. Tognazzini and
the Swiss American Bank had no actual knowledge that plain-
tiff was the owner of said real property.'

"Standing alone this finding will not support the judgment
for damages for slander of title rendered against defendants
Tognazzini and Swiss American Bank. The finding of the
trial court undoubtedly was sufficient to convict the desig-
nated defendants of carelessness in consummating a business
transaction involving the title to real property; but neither
the finding referred to nor the evidence upon which it was
based justifies the conclusion that the deed in controversy
was knowingly accepted in furtherance of a conspiracy to
slander plaintiff's title to the property described in the deed.
'Slander of title,' as recognized by the law, may be defined
to be defamation of title to property, real or personal, by one
who falsely and maliciously disparages the title thereto, and
thereby causes the owner thereof some special pecuniary loss

or damage.   (Newhall on Slander of Title, p. 203; *Burkett* v. *Griffith,* 90 Cal. 532, [25 Am. St. Rep. 151, 13 L. R. A. 707, 27 Pac. 527].)   Admittedly under this definition slander of title may be committed by maliciously clouding the title to real property and causing damage to the owner thereof by the execution, willful acceptance, and malicious recordation of a deed which falsely declares the title of the property involved to be in a person other than the true owner.   In short an action for slander of title may be based upon defamatory words contained and published in an executed deed.   It is essential, however, to the maintenance of such an action that the party claiming to be aggrieved by an alleged slanderous disparagement of his title should show, among other things, not only that the statements complained of were false, but that they were maliciously made with the intent to defame and thereby disparage the title involved.   In other words, malice, express or implied, in the making of slanderous statements is an essential ingredient of a cause of action for damages for slander of title, without proof of which such action must fail.   (*Chesebro* v. *Powers,* 78 Mich. 472, [44 N. W. 290; *Harrison* v. *Howe,* 109 Mich. 476, [67 N. W. 527]; *Walkley* v. *Bostwick,* 49 Mich. 374, [13 N. W. 780]; *May* v. *Anderson,* 14 Ind. App. 251, [42 N. E. 946]; *Cardon* v. *McConnell,* 120 N. C. 461, [27 S. E. 109]; *Hopkins* v. *Drowne,* 21 R. I. 20, [41 Atl. 567]; *Hines* v. *Lumpkin,* 19 Tex. Civ. 556, [47 S. W. 818]; *Malachy* v. *Soper,* 3 Bing. N. C. (Eng.) 371, [132 Eng. Reprint, 453]; *Walden* v. *Peters,* 3 Rob. (La.) 331, [38 Am. Dec. 213]; *Burkett* v. *Griffith,* 90 Cal. 532, [25 Am. St. Rep. 151, 13 L. R. A. 707, 27 Pac. 527]; Newell on Defamation, 206, 207, 322; Townshend on Libel and Slander, 138; 5 Odgers on Libel & Slander, pp. 80, 84; 7 Folkard on Slander & Libel, p. 55.)

"In the present case the plaintiff undoubtedly established his claim of clear title to the lands in controversy; but aside from this the showing made by him, and the finding of fact above referred to, meet the requirements of the law of the case, in so far as the issue of damages for slander of title was determined against the appealing defendants, in the particulars only that the slanderous statements uttered and published in the deed relied upon as a cause of action for damages were false and proximately provocative of damage to the plaintiff.   It was neither shown in evidence nor found

in the finding referred to that the designated defendants were actuated by malicious motives when they accepted and published the deed from the Foderas. It was, as has been shown, essential to the plaintiff's cause of action for damages that such malice be proved and found; and the burden of proving malice, express or implied, rested upon the plaintiff. True, malice may be fairly implied in any given case from proof of the falsity of an uttered or published defamation when the attendant circumstances convincingly point to the inference that the party charged with the slander of title was not in good faith endeavoring to uphold or assert a supposedly valid claim of title in himself. Such, however, is not the case here. The particular finding of fact referred to is utterly silent as to whether or not the acceptance and recordation of the deed in controversy were prompted by malice, express or implied; and this is so in all likelihood because the undisputed evidence upon the whole case not only fails to show, either expressly or by fair implication, that malice was the motive which induced the defamation complained of, but, to the contrary, compels the conclusion that the appealing defendants were actuated solely by an honest but mistaken belief that the lands described in the deed in question had been legitimately conveyed to them. This being so, there is no escape from the conclusion that the facts found by the trial court in the finding referred to fall short of constituting a wrong which in contemplation of law will support the judgment rendered against the appealing defendants upon the theory that they had committed an actionable slander of plaintiff's title. (5 Odgers on Libel & Slander, pp. 80, 84; *Butts* v. *Long,* 106 Mo. App. 313, [80 S. W. 312]; *Walkley* v. *Bostwick,* 49 Mich. 374, [13 N. W. 780].)

"Other findings of fact were to the effect: 1. That the defendants Tognazzini and Swiss American Bank had conspired with Fodera to encumber plaintiff's title, and in pursuance of such conspiracy accepted the deed in controversy and placed the same on record; 2. That said defendants and each of them never had any reason to claim that Fodera had any interest in the plaintiff's lands; and, 3. That said defendants did not act in good faith in taking the deed from Fodera.

"These findings are absolutely unsupported by any direct evidence; and, as we have already indicated, it cannot be fairly said that the circumstances of the transaction as re-

vealed by the evidence upon the whole case show or tend to show that the deed in controversy was accepted and recorded by the defendant Tognazzini for any purpose save the one testified to by him. In short, the only direct evidence upon this phase of the case was contained in the deposition of Tognazzini, and that evidence, standing as it does uncontradicted and unimpeached by the admitted facts and circumstances of the transaction, compels, we think, the conclusion that, although not entirely free from fault, the appealing defendants nevertheless, in good faith and without malice, asserted what they honestly believed to be a valid claim of title to plaintiff's property.''

For the reasons given in the above opinion the motion to dismiss the appeal is denied. The judgment, in so far as it purports to assess damages against the defendants, Tognazzini and the Swiss American Bank, is reversed. The order denying the motion of said defendants for a new trial is affirmed as to all issues relative to the title to the land described in the complaint, and in all other respects is reversed.