GEHRKE v JANOWITZ

1. MORTGAGES—FORECLOSURE—POWER OF SALE—NOTICE—PUBLICA-
   TION—STATUTES.
   A provision in a mortgage that on foreclosure the mortgagee may
   without notice to any persons take possession and sell the
   property is directly contrary to the statute requiring publica-
   tion and posting by way of notice to the mortgagor that the
   foreclosure is under way and is invalid (MCLA 600.3201,
   600.3208).

2. LIBEL AND SLANDER—SLANDER OF TITLE—MALICE—EVIDENCE.
   The crucial element of slander of title is malice; whenever a man
   claims a right or title in himself, in possession or in remainder,
   it is not enough for the plaintiff to prove that he had no such
   right, he must also give evidence of express malice.

3. LIBEL AND SLANDER—SLANDER OF TITLE—MORTGAGES—POWER OF
   SALE—MALICE—SUMMARY JUDGMENT.
   Summary judgment for defendant on plaintiffs' damage claim
   against a builder for slander of title was properly granted
   where the claim rested on an invalid power of sale in a
   mortgage on plaintiffs' house, and where the mortgage had
   been foreclosed, because it was necessary to show real malice
   on the builder's part to establish a slander of title, and where
   reasonable men could well differ over whether or not the
   subject mortgage contained the power of sale within the con-
   templation of the mortgage statutes, there was no real malice
   established (MCLA 600.3201, 600.3208).

4. LIBEL AND SLANDER—SLANDER OF TITLE—MALICE—MORTGAGES—
   FORECLOSURE—NOTICE—STATUTES.
   The fact that a mortgagee knew that notice had to be given a

REFERENCES FOR POINTS IN HEADNOTES
[1] 55 Am Jur 2d, Mortgages §§ 637–644.
[2–4] 50 Am Jur 2d, Libel and Slander §§ 556, 557.
   Malice as element of action for slander of title. 129 ALR 179.
   Recording of instrument purporting to affect title as slander of title.
   39 ALR2d 840.
[5] 1 Am Jur 2d, Abuse of Process § 2.

mortgagor that a foreclosure was under way in order for the foreclosure to be valid serves as no basis for finding express malice, the crucial element the mortgagor needs to prove in a slander of title case, where the mortgage foreclosed contained language that notice need not be given (MCLA 600.3201, 600.3208).

5. PROCESS—ABUSE OF PROCESS—INTENTIONS.

A regular use of process with bad intentions is not a malicious abuse of that process.

Appeal from Macomb, Hunter D. Stair, J. Submitted Division 2 May 15, 1974, at Detroit. (Docket No. 17637.) Decided September 25, 1974.

Complaint by Questin M. Gehrke and Susan J. Gehrke against Maurice Janowitz and others for damages for slander of title and for injunctive relief. Summary judgment for plaintiffs in part and for defendants in part. Defendants appeal. Plaintiffs cross-appeal. Affirmed and remanded with instructions.

*William A. O'Brien, Jr.,* for plaintiffs.

*Nelson, Gracey, Turner & Turner,* for defendants.

Before: V. J. BRENNAN, P. J., and R. B. BURNS and R. L. SMITH,* JJ.

R. L. SMITH, J. On March 14, 1970, defendant Crown Garage Builders & Modernization Co., Inc., entered into a home-improvement contract with plaintiffs Questin and Susan Gehrke under the terms of which Crown was to install certain home improvements to plaintiffs' residence. Plaintiffs were to pay Crown the sum of $7,400 in the

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

following manner, $2,000 upon signing the contract, $2300 upon completion of the rough carpentry, $2300 upon rough inspection, and $800 upon completion.

It is the contention of Crown that on the same date the plaintiffs signed a mortgage to secure payment of the final $800. The plaintiffs insist that they never signed a mortgage and that the signatures purported to be theirs on the mortgage were forgeries. It is the further contention of Crown that they completed their work under the contract and that they are entitled to the final payment of $800 while plaintiffs contend that the work is incomplete.

On December 2, 1970, Crown recorded the alleged mortgage and in January, 1971, commenced foreclosure by advertisement. On March 12, 1971, plaintiffs' counsel wrote to Crown that the alleged mortgage did not contain a valid power of sale and that the signatures thereon were forgeries. Crown thereafter continued with the foreclosure and on April 2, 1971, bid in the property at the sheriff's sale for $939.90.

When summary proceedings were initiated by Crown to obtain possession plaintiffs filed a complaint on October 1, 1971, seeking $10,000 actual damages and $100,000 punitive damages. The complaint alleged a slander of title based upon an allegedly invalid power of sale and forgery. A jury trial was demanded. On May 18, 1973, the trial court granted summary judgment and in a bench opinion found the alleged mortgage did not contain a valid power of sale. The court also found that the foreclosure of the mortgage by advertisement was invalid because of this. The court set aside the sheriff's deed, restrained further summary proceedings to obtain possession, and stated

that the complaint failed to state a cause of action for damages based on the invalid power of sale. The court entered judgment accordingly. The trial court failed to pass on the allegations of forgery. Both parties appeal, Crown claiming that the mortgage did contain a valid power of sale and the plaintiffs claiming that they were denied a trial under their complaint.

The first question presented is whether the trial court erred in finding that there was no valid power of sale in the mortgage. The trial court based its findings on this issue on public policy declaring that "no court would grant the power of sale on the basis of a future mortgage for less than $1000 * * * . This is unfair to the plaintiffs in this case".

The mortgage in question contained the following language:

" * * * then the entire unpaid balance shall immediately become due and payable at the option of the mortgagee and the mortgagee, without notice to any persons may take possession of said property and proceed to grant, bargain and sell, release and convey the said property and appurtenances at public vendue and to execute and deliver to the purchasers at such sale good and sufficient deeds of convenance [sic] in law, pursuant to the statute in such case made and provided and * * * ."

MCLA 600.3201; MSA 27A.3201 reads as follows:

"Every mortgage of real estate, containing therein a power of sale, upon default being made in any condition of such mortgage, may be foreclosed by advertisement, in the cases and in the manner hereinafter specified."

The forementioned provision in the mortgage that the mortgagee may without notice to any

persons take possession and sell the property is directly contrary to MCLA 600.3208; MSA 27A.3208, which provides for publication and posting by way of notice to the mortgagor that the foreclosure is under way. While this power of sale may be valid in some other states,[1] under statutes which do not contain the notice provisions that we have in Michigan, such a power of sale, expressly providing that there is no notice, is not the power of sale contemplated by § 3201. A power of sale such as the one in the mortgage is foreign to our jurisprudence and ineffectual as a basis for foreclosure by advertisement.

The trial court did not err in granting summary judgment regarding plaintiffs' damage claims insofar as they purport to rest on the invalid power of sale. Under facts such as in this case it is necessary to show real malice. See 1 Harper & James, Torts, §§ 6.1 and 6.2, pp 474–485 *Glieberman v Fine,* 248 Mich 8; 226 NW 669 (1929), seems to be the last word on the subject of slander of title by

---

[1] "There are four principal methods by which mortgages may be foreclosed in the United States, all depending upon equitable principles in their origin and proceeding upon equitable principles in their practice. 1. *Foreclosure by entry and possession* originally required the actual entry upon and possession of the mortgaged premises; this procedure has been greatly assisted by the writ of entry, which is much in the nature of an equitable action, though nominally an action at law. Foreclosure by entry, however, is mainly confined to the New England and a few of the southern states. 2. *Strict foreclosure,* or foreclosure without a sale, was a procedure greatly used in England at one time, and its purpose was to perfect in the mortgagee an absolute title, instead of to obtain a decree of sale; the courts in most states recognize this method, but allow its use only in exceptional cases, owing to its severity upon the rights of the owner of the equity of redemption. 3. *Statutory foreclosure, or foreclosure by advertisement,* is a procedure provided in nearly every state by its legislature, all the steps in which are specifically prescribed by statute. Owing to its extreme technicality and insufficiency of remedy, it is seldom practiced where an equitable action is allowed. 4. *An equitable action* is now the almost universal procedure among the English-speaking races, for the foreclosure of a mortgage." Wiltsie, Mortgage Foreclosure (4th ed, 1927), § 24, pp 31–32. *See also, op. cit.,* § 31.

our Supreme Court. In *Glieberman* we learn that the crucial element is malice. The Court said citing, *Harrison v Howe,* 109 Mich 476; 67 NW 527 (1896), "[w]henever a man claims a right or title in himself, in possession or in remainder, it is not enough for the plaintiff to prove that he had no such right; he must also give evidence of express malice".

The trial court held that reasonable men could well differ over whether or not the subject mortgage contained the power of sale within the contemplation of the Michigan statutes and therefore there was no malice. We concur. See *Glieberman, supra,* at p 13, and cases there cited for the proposition that the presumption that Crown knew the law serves as no basis for finding express malice.

The trial court failed to pass on the allegations regarding forgery and thus we do not have a reviewable record before us. The alleged forgery might well serve to prove express malice.

The plaintiffs' allegations regarding the invalid power of sale do not sustain a cause of action for abuse of process. In *McKay Machine Co v Bosway Corp,* 24 Mich App 276; 180 NW2d 96 (1970), the Court cited *Spear v Pendill,* 164 Mich 620; 130 NW 343 (1911), and said "[t]he proper issuance of process may become tainted by its subsequent use, but a regular use of process with bad intentions is not a malicious abuse of that process. *Spear v Pendill, supra.* The manner of use of the process, not the intention, is what is evaluated".

We remand for further proceedings not inconsistent with this opinion. Costs to the plaintiffs.

All concurred.